UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CARON SPENCER,

    Plaintiff,

v.

CRAIG MACDONALD, and
JACK TAEFF,

    Defendants.

Case No. 14-cv-13858

UNITED STATES DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

UNITED STATES MAGISTRATE JUDGE
R. STEVEN WHALEN

_____/

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT TAEFF'S MOTION FOR SUMMARY JUDGMENT [24]**

**I. INTRODUCTION**

On October 6, 2014, Caron Spencer ("Plaintiff") filed a Complaint and Jury Demand against Michigan State Police Post officers Craig MacDonald and Jack Taeff (collectively, "Defendants"). *See* Dkt. No. 1, p. 1 (Pg. ID No. 1). In his Complaint, Plaintiff raises three counts alleging that Defendants violated his constitutional rights by using excessive force against him (Count I), falsely arrested/imprisoned him (Count II), and performed an illegal search and seizure (Count III). *See id.* at 3–6, ¶¶ 20–39 (Pg. ID No. 3–6).

Presently before the Court is Defendant Taeff's Motion for Summary Judgment [24]. The matter is fully briefed. After reviewing the briefing, the Court concludes that oral argument will not aid in the resolution of this matter. Accordingly, the Court will resolve the Motion on the briefs as submitted. *See* E.D. Mich. L.R. 7.1(f)(2). For the reasons discussed herein, the Court will **GRANT** in part and **DENY** in part Defendant Taeff's Motion for Summary Judgment.

## II. BACKGROUND

On the night of Saturday, October 13, 2012, Plaintiff and four friends were traveling in a 1998 Mercury Grand Marquis ("the vehicle") on their way to a friend's house party. Dkt. No. 24-6, pp. 6–7 (Pg. ID No. 227–28). Shortly after their departure, the vehicle was stopped by Michigan State Police officers Defendants MacDonald and Taeff for violations of the Michigan Vehicle Code, including an inoperative license plate light[1] and the front passenger, Bradley Barker, not wearing his seatbelt.[2] *See id.* at 11–15. The driver, Robert O'Neal, pulled the vehicle into a nearby gas station, stopping the vehicle next to a gas pump on the driver's side, once he saw the police vehicle lights flashing. *See id.* at 14. While the vehicle was pulling over, Defendants claim to have seen furtive movements from the three backseat passengers. Dkt. No. 24-3, p. 8 (Pg. ID No. 126).

Defendant MacDonald approached the driver's side of the vehicle, informed the driver of the reason for the stop, and requested license, registration, and identification from the two men in the front seats, O'Neal and Barker. *Id.* at 10. MacDonald then sought to obtain the identification cards for the backseat passengers as well. *Id.* at 13–14. Plaintiff and the other backseat passengers chose to ignore MacDonald's questions and stare forward, avoiding eye contact. *See id.* After Plaintiff failed to respond to MacDonald's request to exit the vehicle,[3] MacDonald grabbed Plaintiff's wrist to remove him by force. *Id.* at 15. During this altercation, MacDonald asserts that he had to maneuver Plaintiff suddenly to avoid smashing his face into the curb upon

---

[1] There does not appear to be any dispute that the vehicle's license plate light was burned out at the point of the traffic stop. Thus, there was sufficient probable cause to stop the vehicle for a violation of the vehicle code.

[2] Barker and the other vehicle passengers all assert that Barker was wearing his seatbelt that evening.

[3] While all other accounts dispute this, Plaintiff claims that he was stepping out of the vehicle on his own, such that 80% of the movement was his own and 20% was attributable to Defendant MacDonald. Dkt. No. 24-4, p. 37 (Pg. ID No. 178).

which the gas pump was placed. *Id*. at 16–18. Plaintiff contends that MacDonald grabbed his shirt collar and began to intentionally choke him, telling Plaintiff to "shut the fuck up" and choking him harder when he protested. Dkt. No. 24-4, p. 41 (Pg. ID No. 182). Although Plaintiff does not recall the period of time in which the alleged choking lasted, his fellow passengers noted that it lasted around 10–15 seconds. *See id.* at 42; Dkt. No. 24-6, p. 29 (Pg. ID No. 250); Dkt. No. 27-4, p. 24 (Pg. ID No. 288). All the while, Defendant Taeff was positioned at the rear of the car, observing the driver and passenger who had already exited the vehicle, as well as the backseat passengers. Dkt. No. 24-2, p. 17 (Pg. ID No. 114).

Around this time, Lieutenant James Grady arrived separately as back-up and assisted MacDonald in securing and handcuffing Plaintiff. Dkt. No. 24-9, p. 12 (Pg. ID No. 348). After spitting in Grady's vehicle, Plaintiff was transferred into custody of the Inkster Police who drove him to the police station and cited him for drunk[4] and disorderly conduct. Dkt. No. 24-3, p. 22 (Pg. ID No. 140); Dkt. No. 24-10, p. 2 (Pg. ID No. 375). The rest of the vehicle's occupants were allowed to leave the stop without any tickets or citations. Dkt. No. 24-7, p. 29 (Pg. ID No. 293). Plaintiff was released from the Inkster Police Station later that night and recalled having bruising on his wrists, but no other physical injuries. Dkt. No. 24-4, pp. 28, 55–56 (Pg. ID No. 169, 196–97).

It is with these contrasting positions regarding the facts from the incident in question that the Court must consider the instant Motion for Summary Judgment.

---

[4] Plaintiff and other riders in the vehicle stated that Plaintiff had not consumed any alcohol that night, prior to the traffic stop.

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 56(c) "directs that summary judgment shall be granted if 'there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " *Cehrs v. Ne. Ohio Alzheimer's Research Ctr.*, 155 F.3d 775, 779 (6th Cir. 1998). The court must view the facts, and draw reasonable inferences from those facts, in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). No genuine dispute of material fact exists where the record "taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus., Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Ultimately, the court evaluates "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

### IV. DISCUSSION

Defendant Taeff argues that he is entitled to summary judgment on all of Plaintiff's claims under the doctrine of qualified immunity. *See* Dkt. No. 24, p. 2. Defendant Taeff argues Plaintiff cannot bring a viable failure to intervene claim against Taeff because the use of force, if any, arose spontaneous and ended quickly. *See id*. at 16. Further, Defendant Taeff asserts that he was not in the immediate vicinity of where the alleged force occurred, and that another law enforcement officer, who was not named in the suit, was in a better position to prevent the harm. *See id*. at 16–17. The Court finds that Defendant Taeff is not entitled to summary judgment on Count I, but will grant dismissal of Counts II and III against Taeff. A detailed analysis is below.

**1. Defendant Taeff's Claim that He Is Entitled to Qualified Immunity**

Defendant Taeff's Motion for Summary Judgment relies on the doctrine of qualified immunity to shield him against the burdens of litigation and trial. Dkt. No. 24, p. 20 (Pg. ID No. 89). Under this doctrine, government officials, including law enforcement officers, are immune from civil liability unless they violate a plaintiff's clearly established constitutional rights in the course of performing their discretionary functions. *Jones v. Byrnes*, 585 F.3d 971, 974 (6th Cir. 2009).

The Court utilizes a two-step inquiry to determine whether a defendant is entitled to qualified immunity. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001). First, the question is whether the facts alleged, taken in the light most favorable to the plaintiff, show that the defendant violated the plaintiff's constitutional rights. *Id*. Next, the second question asks whether the constitutional right was "clearly established" at the time of violation. *Id*. The sequence of these questions is not rigid, as the Court may utilize its discretion to consider these questions in whatever order is appropriate, in light of the circumstances in the particular case at hand. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). "The plaintiff bears the ultimate burden of demonstrating that the defendant is not entitled to qualified immunity." *Rodriguez v. Passinault*, 637 F.3d 675, 689 (6th Cir. 2011).

Under this framework, the Court must determine whether Plaintiff pled sufficient facts alleging that Defendant Taeff violated his constitutional rights, and that those rights were clearly established at the time of the alleged violation. "In qualified immunity cases, this usually means adopting . . . the plaintiff's version of the facts," unless the plaintiff's version of the facts "is blatantly contradicted by the record, so that no reasonable jury could believe it." *Scott v. Harris*, 550 U.S. 372, 378, 380 (2007). The facts alleged demonstrate a violation of Plaintiff's clearly established constitutional right to be free from excessive force. Thus, Defendant's argument must

hinge on whether Plaintiff alleged sufficient facts that Defendant himself violated Plaintiff's constitutional rights.

### 2. The Court Will Not Grant Qualified Immunity to Defendant Taeff on Plaintiff's Fourth Amendment Claim of Excessive Force

In his first claim, Plaintiff asserts that Defendants violated his Fourth Amendment rights by using excessive force against him during the traffic stop. Dkt. No. 1, pp. 3–4, ¶¶ 20–26 (Dkt. No. 3–4). Specifically relating to Defendant Taeff, Plaintiff alleges that "Taeff failed to intervene on Plaintiff's behalf and stop the excessive force being used against him." *Id*. at ¶ 23.

Excessive force claims are analyzed by applying a reasonableness standard, which "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). In order to hold a law enforcement officer civilly liable for use of excessive force, a plaintiff must prove that (1) the officer actively participated in the use of excessive force; (2) supervised the officer who used excessive force; or (3) owed the victim a duty of protection against the use of excessive force. *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997). The Court will assume that Plaintiff relies on the third prong: that Defendant Taeff owed Plaintiff a duty of protection against the force applied.

"It is clear that there are circumstances under which police officers can be held liable for failure to protect a person from the use of excessive force." *Turner v. Scott*, 119 F.3d at 429. An officer may be held liable for failing to prevent the use of excessive force when "(1) the officer observed or had reason to know that excessive force would be or was being used, and (2) the officer had both the opportunity and the means to prevent the harm from occurring." *Id*. In *Turner*, the plaintiff did not meet the first prong of the duty to intervene test where no facts in the

-6-

record indicated that the officer actually observed or should have known about the application of force. *Id*. Instead, the record indicated that the officers had not communicated with one another prior to or during the application of force, and that the officer seeking qualified immunity had his back turned during the incident. *Id*. Since the record showed that the officer had no reason to be aware of the force, the Sixth Circuit found that he could not have prevented further application of force and should be granted qualified immunity. *See id*. at 430.

In the present case, there is a question of material fact as to whether Defendant Taeff actually observed Defendant MacDonald's removal of Plaintiff from the vehicle. The record contains seven depositions: four from the vehicle's passengers and three from law enforcement officers present during at least part of the traffic stop. *See* Dkt. No. 24-2–24-4, 24-6–24-9 (Pg. ID No. 98–218, 222–373). The accounts of the events that transpired during the traffic stop differ in many ways, including testimony about Defendant Taeff's proximity to Plaintiff's removal and the time period in which the alleged choking took place.

### a. Officer Depositions

In his deposition, Defendant Taeff stated that he saw Defendant MacDonald take Plaintiff by the wrists at one point while he was standing in the rear of the vehicle, watching the driver and front seat passenger. Dkt. No. 24-2, pp. 17–18 (Pg. ID No. 114–15). Defendant MacDonald recalled that Defendant Taeff was standing by the back of the vehicle while he removed Plaintiff and used an arm bar to control him, and that Lieutenant Grady assisted in controlling and handcuffing Plaintiff. Dkt. No. 24-3, pp. 9, 15–21 (Pg. ID No. 127, 133–39). Under MacDonald's recollection, the events "all happened so fast." *Id*. at 18 (Pg. ID No. 136). Lieutenant James Grady recalls showing up to the traffic stop as backup and speaking with Plaintiff in an effort to have him voluntarily exit the vehicle. Dkt. No. 24-9, pp. 10–12 (Pg. ID

No. 346–48). Grady stated that Plaintiff was noncompliant and belligerent, so Defendant MacDonald had to reach in and force Plaintiff out of the vehicle, grabbing ahold of his shirt in the process. *Id.* at 12. Grady then helped secure Plaintiff and handcuffed him, placing Plaintiff in his vehicle. *Id.* Grady does not specifically mention Defendant Taeff in the removal of Plaintiff from the vehicle and subsequent arrest. *See id.*

### b. Plaintiff and Witness Depositions

The depositions from the vehicle's occupants paint a slightly different picture. Barker stated that he was standing by the trunk of the vehicle and felt it rock as Plaintiff was forced out by Defendant MacDonald.[5] Dkt. No. 24-6, pp. 26–28 (Pg. ID No. 247–49). After feeling the car rock, Barker turned around and saw MacDonald choking Plaintiff. *See id.* Troy Singleton, a backseat passenger, did not see Plaintiff being choked, but did recall seeing him being forcibly removed from the vehicle by Defendant MacDonald. Dkt. No. 24-8, pp. 21–22 (Pg. ID No. 320–21). Singleton heard Plaintiff tell MacDonald not to choke him and otherwise struggling to talk during the incident. *See id.* at 22–23. Although Plaintiff agreed that Taeff had no physical contact with him, he asserted that Taeff was present on the scene when the choking occurred. Dkt. No. 24-4, p. 72–73 (Pg. ID No. 213–14).

Barker stated that the choking incident lasted "a couple seconds, ten to fifteen seconds." *See* Dkt. No. 24-6, p. 29 (Pg. ID No. 250). O'Neal also stated that the choking incident lasted "between ten and fifteen seconds." Dkt. No. 27-4, p. 24 (Pg. ID No. 288). Singleton reported the time period between Plaintiff being removed from the car and Plaintiff telling MacDonald not to

---

[5] O'Neal stated that it was Defendant Taeff that forcibly removed Plaintiff from the vehicle prior to Defendant MacDonald choking Plaintiff, but Plaintiff does not adopt O'Neal's version of the facts of that evening. Dkt. No. 27-4, pp. 20–24 (Pg. ID No. 284–88).

choke him lasted about "30, 40 seconds." Dkt. No. 24-8, p. 26 (Pg. ID No. 325). Plaintiff could not recall how long the choking incident lasted. *See* Dkt. No. 24-4, pp. 72–73 (Pg. ID No. 213–14).

Viewing the facts alleged in the light most favorable to the nonmoving party, there is a genuine issue of material fact as to whether Defendant Taeff had reason to know that excessive force was being used and whether Taeff had the opportunity and means to prevent that harm from occurring. Where Defendant Taeff was positioned, near Barker and O'Neal behind the vehicle, was not far from where Plaintiff was allegedly choked by Defendant MacDonald, adjacent to the back door on the driver's side. Indeed, Defendant Taeff stated that he was able to see when Defendant MacDonald initially grabbed Plaintiff's wrists. Dkt. No. 24-2, p. 12 (Pg. ID No. 109). Further, Barker stated that the car rocked during this process, at which point he was able to turn and observe the choking incident. Dkt. No. 24-6, pp. 27–28 (Pg. ID No. 248–49). Since Defendant Taeff was observing Barker, he would have seen Barker turning to observe the choking. Indeed, Defendant Taeff was close enough to see that there was "a bit of a struggle to get [Plaintiff] out" of the vehicle. Dkt. No. 24-2, p. 12 (Pg. ID No. 109). Further, although Defendant Taeff argues in his motion that the force "did not last long," the Court is unable to determine at the summary judgment stage that ten to forty seconds, the period alleged by the witnesses, was too short of a period in which to intervene and stop MacDonald from choking Plaintiff. *See Dixon v. Roscommon Cty.,* 896 F. Supp. 2d 670, 678 (E.D. Mich. 2012) (denying qualified immunity to deputies where there was a question of fact as to whether six seconds was enough time for the defendants to observe the plaintiff being choked and intervene).

Contrary to the Defendant Taeff's contention, a reasonable person could conclude that there was sufficient time for him to intervene on Plaintiff's behalf. Consequently, the Court will not grant Defendant Taeff qualified immunity or dismiss Count I against Taeff.

### 3. The Court Will Dismiss Plaintiff's Claim of False Arrest or Imprisonment Against Defendant Taeff

In Plaintiff's second claim, he alleges that Defendants falsely arrested Plaintiff for disorderly conduct, a charge that was later dismissed after Defendants did not appear in court. *See* Dkt. No. 1, p. 3–5, ¶¶ 17, 27–31 (Pg. ID No. 3–5). He further alleges that Defendants detained him without any legal justification or probable cause. *See id.*

A plaintiff pursuing a false-arrest claim must demonstrate that the defendant "participated in an illegal and unjustified arrest, and that [the defendant] lacked probable cause to do so." *Bletz v. Gribble*, 641 F.3d 743, 758 (6th Cir. 2011) (quoting *Walsh v. Taylor*, 263 Mich. App. 618, 626, 689 N.W.2d 506, 513 (2004)). A claim of false imprisonment requires a showing that (1) the defendant committed an act with the intention of confining the plaintiff; (2) the act directly or indirectly resulted in the plaintiff's confinement; and (3) the plaintiff was conscious of his or her confinement. *Id.* Additionally, false imprisonment requires that the restraint occurred without probable cause to support it. *Id.*

With respect to the first half of Plaintiff's claim, false arrest, Plaintiff needed to show that Defendant Taeff participated in his illegal and unjustified arrest, and that this arrest lacked probable cause. *See Walsh*, 689 N.W.2d at 513. A thorough review of the record indicates that Defendant MacDonald and Lieutenant Grady were the arresting officers at the traffic stop. Although Defendant Taeff was present at the traffic stop, mere presence does not imply that he was an arresting officer, without any allegations that he directly participated in the arrest. *C.f. United States v. Hence*, 60 F. App'x 560, 561 (6th Cir. 2003) (referring to "the arresting officer

-10-

and his partner" separately where the partner did not make the arrest); *United States v. Coles*, 948 F.2d 1290 (6th Cir. 1991) (distinguishing the arresting officer from his partner when the partner was present at the traffic stop leading to arrest). The Sixth Circuit has "never held that an officer who is neither the arresting officer nor the proponent of the warrant can be liable for false arrest." *Schulz v. Gendregske*, 544 F. App'x 620, 625 (6th Cir. 2013). Since none of the facts in the record indicate that Defendant Taeff was the arresting officer[6] or that there was a warrant involved, Defendant Taeff is entitled to qualified immunity on Plaintiff's false-arrest claim. *See id*.

The second half of this claim, false imprisonment, requires that Plaintiff show that Defendant Taeff committed an act with the intention of confining Plaintiff, that Taeff's act resulted in Plaintiff's confinement, that this restraint occurred without probable cause, and that Plaintiff was conscious of his confinement. *See Walsh*, 689 N.W.2d at 514. Plaintiff's allegations and the record lack any specific allegation that Taeff intentionally confined him, focusing instead on the specific acts of Defendant MacDonald and Lieutenant Grady that resulted in Plaintiff being handcuffed and placed in a police vehicle. There does not appear to be any genuine issue of material fact as to whether Defendant Taeff falsely imprisoned Plaintiff. Accordingly, Defendant Taeff is entitled to qualified immunity on the charge of false arrest or false imprisonment. The Court dismisses Count II of the Complaint against Defendant Taeff with prejudice.

---

[6] Although Defendant Taeff's name was on the citation issued to Plaintiff, *see* Dkt. No. 24-10, p. 2 (Pg. ID No. 375), each of the deposition testimonies confirms that Taeff was not one of the officers who arrested Plaintiff.

### 4. The Court Will Dismiss Plaintiff's Fourth Amendment Claim of Illegal Search and Seizure Against Defendant Taeff

Plaintiff's third and final claim alleges that Defendants violated his Fourth Amendment rights by conducting an illegal and search and seizure. Dkt. No. 1, pp. 5–6, ¶¶ 32–39 (Pg. ID No. 5–6). Based on the facts alleged, it appears that Plaintiff's illegal search and seizure claim relies primarily on the allegations that he was seized and arrested for drunk and disorderly conduct at the traffic stop without probable cause.

The Fourth Amendment guarantees people the right to be free from unreasonable searches and seizures and to be secure in their persons, houses, papers, and effects. U.S. CONST. amend. IV.[7] An ordinary traffic stop constitutes a "seizure" within the meaning of the Fourth Amendment. *United States v. Blair*, 524 F.3d 740, 748 (6th Cir. 2008). Nonetheless, law enforcement officers may legally stop a vehicle without offending the Fourth Amendment where there is probable cause to believe that a traffic violation has occurred. *Id*. "When a traffic stop is supported by probable cause, an officer's subjective intent is irrelevant." *Id*.

In determining whether a defendant committed a violation of a plaintiff's constitutional rights, "[e]ach defendant's liability is assessed individually, according to his own actions." *Gordon v. Louisville/Jefferson Cty. Metro Gov't*, 486 F. App'x 534, 541 (6th Cir. 2012). To the extent that this claim seeks to hold Defendant Taeff liable for Plaintiff's detention during the traffic stop, that allegation fails because there is the undisputed fact that the license plate light had burned out. Defendants need not rely on the allegation that the front passenger was not wearing his seat belt, which is disputed, to sustain the validity of the stop. The stop was

---

[7] The right to be free from illegal searches and seizures is "clearly established" and thus, satisfies the second prong of the Morrison test for qualified immunity. *See Morrison v. Bd. Of Trustees Of Green Twp.*, 583 F.3d 394, 400 (6th Cir. 2009).

permitted solely on the violation caused by the burnt out license plate bulb. *See* Mich. Comp. Laws § 257.686.

Any allegations unrelated to the original reason for the traffic stop fail to mention actions of Defendant Taeff. As in the prior count, the record lacks any nonconclusory allegations of Defendant Taeff's involvement in his detention and arrest. The facts pled in the Complaint and the deposition testimonies consistently focus on Defendant MacDonald's actions that resulted in Plaintiff's arrest. Although Defendant Taeff was present at the scene, there is no question of fact as to whether he was the one who searched or seized Plaintiff. *See Ghandi v. Police Dep't of City of Detroit*, 747 F.2d 338, 352 (6th Cir. 1984) ("As a general rule, mere presence at the scene of a search, without a showing of direct responsibility for the action, will not subject an officer to liability.").

Thus, as Plaintiff has not provided any factual dispute that Defendant Taeff was involved in the alleged illegal search and seizure of Plaintiff, there is no need to evaluate whether there was sufficient probable cause to detain Plaintiff. Defendant Taeff is entitled to qualified immunity on the charge of illegal search and seizure. The Court will dismiss Count III of the Complaint against him with prejudice.

## V. CONCLUSION

For the reasons stated herein, the Court will **GRANT** in part and **DENY** in part Defendant Taeff's Motion for Summary Judgment [24]. Counts II and III against Defendant Taeff are dismissed with prejudice.

IT IS SO ORDERED.

Dated: December 30, 2015

Gershwin A. Drain
HON. GERSHWIN A. DRAIN
United States District Court Judge

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on **December 30, 2015.**

s/Tanya R. Bankston
TANYA R. BANKSTON
Case Manager & Deputy Clerk
